```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
_____
                                    )
ASHLEY CATATAO,                     )
                                    )
             Plaintiff,             )
                                    )   Civil Action
     v.                             )   No. 22-10620
                                    )
SIG SAUER, INC.,                    )
                                    )
             Defendant.             )
_____ )
```

**MEMORANDUM AND ORDER**

July 9, 2024

Saris, D.J.

**INTRODUCTION**

Plaintiff Ashley Catatao, an officer with the Somerville Police Department, was injured when her Sig Sauer P320 duty pistol fired in its holster without her pulling its trigger. She sues the gun's manufacturer, Defendant Sig Sauer, Inc., on five counts.[1] Centrally, she alleges Sig Sauer designed the P320 defectively and the defect caused her injuries. Sig Sauer moves for summary judgment. After a hearing and review of the record, the court **DENIES** the motion for summary judgment (Dkt. 67).

---

[1] Catatao asserts claims for negligence, breach of the implied warranty of merchantability, negligent infliction of emotional distress, intentional infliction of emotional distress, and violation of the Massachusetts Consumer Protection Act.

1

**BACKGROUND**

Drawing all inferences in favor of Catatao, the Court considers the following facts undisputed unless otherwise noted.

I. **The Shooting**

Ashley Catatao is a patrol officer with the Somerville Police Department in Massachusetts. Sig Sauer, Inc. is a gun manufacturer incorporated in Delaware and principally operating in New Hampshire.

On April 6, 2022, Catatao left the Somerville Police Department building and walked to her car in the parking lot. Catatao had a gear bag over her right shoulder and a soft cooler bag over her left shoulder. A keychain with multiple keys hung from the gear bag. Catatao also carried her duty pistol, a Sig Sauer P320, in a Safariland Level III holster on her right hip. Although Catatao's holster was designed to hold a light-bearing pistol, Catatao had not mounted a light on her P320. As a result, there was a gap between her holster's frame and her P320 within it.

As Catatao approached her car, she began to bend over to put her bags down, at which point the pistol discharged. She did not touch its trigger. One round struck her in the leg. Security cameras outside the Somerville Police Department captured footage of the incident. Her right leg was seriously injured. The Somerville Police Department Office of Professional Standards concluded Catatao had handled her pistol appropriately. Sig Sauer

takes the position that the shooting was likely caused by the key on Catatao's bag entering the holster and actuating the pistol's trigger. Sig Sauer's expert found brass-colored scratches on the trigger of Catatao's P320 and damage to her holster. Catatao has put forward no evidence to dispute this cause of the discharge.

**II.   The P320 and its Competitors**

Some pistols come equipped with safety mechanisms that ensure they do not fire unintentionally. A thumb safety is a switch on the side of the pistol. Pressing the switch toggles between "fire mode," in which the user can fire the pistol, and a locked mode, in which she cannot. See Dkt. 67-2 at 5. A trigger safety, also called a "tabbed trigger," is a small tab located on the pistol's trigger that the user must press "for the trigger to be able to fully depress and fire the weapon." Dkt. 67-2 at 5.



*Figure 1. Thumb Safety (left) and Trigger Safety (right) Mechanisms
(See Dkt. 67-13 at 14-15)*

The P320 is a single-action striker-fired pistol. Sig Sauer offers P320s with or without a thumb safety. Sig Sauer does not

sell the P320 with a trigger safety but claims it contains "multiple internal safeties." Dkt. 67-2 at 5 (emphasis added).

The Somerville PD chose the P320 without a thumb safety as its duty pistol. See Dkt. 67-2 at 3 ("[A] manual thumb safety would be problematic from a training and safety perspective if officers drawing their pistol in response to a threat forgot to disengage the safety."). Somerville police officers were trained to keep a round in the chamber.

The P320's main competitors in the striker-fired-pistol market are Glock and Smith & Wesson. Glock manufactures a variety of striker-fired pistols, including the Glock 19, all of which are double-action. All Glock pistols come equipped with a trigger safety, but not with a thumb safety.

## LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute is one which a reasonable jury could resolve in favor of the non-moving party." Kinzer v. Whole Foods Mkt., Inc., 99 F.4th 105, 108 (1st Cir. 2024) (cleaned up) (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23-24 (1st Cir. 2017)). A material fact is one with the "potential to affect the outcome of the suit." Laponte v. Silko Motor Sales, Inc., 926 F.3d 52, 54 (1st Cir. 2019) (quoting Cherkaoui, 877 F.3d at 23).

In general, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The non-moving party "may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Iverson v. City of Bos., 452 F.3d 94, 98 (1st Cir. 2006) (citing Celotex, 477 U.S. at 322-24). The Court views the facts "in the light most favorable to the non-moving party" and draws "all reasonable inferences in [her] favor." Harley-Davidson Credit Corp. v. Galvin, 807 F.3d 407, 408 (1st Cir. 2015) (quoting Ray v. Ropes & Gray LLP, 799 F.3d 99, 104 (1st Cir. 2015)).

## DISCUSSION

The key to Catatao's case is her showing that 1) her P320 was defectively designed, and 2) the defect caused her injuries. See Wayslow v. Glock, Inc., 975 F. Supp. 370, 376-77 (D. Mass. 1996) (holding that under Massachusetts law, negligence, warranty of merchantability, and Chapter 93A claims alleging a product was unreasonably dangerous all require showing defective design and causation); Kearney v. Philip Morris, Inc., 916 F. Supp. 61, 64-65 (D. Mass. 1996) (same); Machado v. Johnson & Johnson, No. 20-11665, 2023 WL 2988625, at *6 (D. Mass. Jan. 20, 2023) (report and recommendation) (analyzing together plaintiff's negligence, design defect, implied warranty, negligent infliction of emotional

5

distress, and intentional infliction of emotional distress claims). Sig Sauer argues Catatao cannot prove a design defect proximately caused her injuries.

Catatao has shown a trialworthy question about whether Sig Sauer designed the P320 defectively. Generally, "[e]xpert testimony . . . is required to support a claim of a design defect." See Pub. Serv. Mut. Ins. v. Empire Comfort Sys., Inc., 573 F. Supp. 2d 372, 380 (D. Mass. 2008) (citing Enrich v. Windmere Corp., 616 N.E.2d 1081, 1084 (Mass. 1993)). And a plaintiff alleging defective design must "prove the availability of a technologically feasible and practical alternative design that would have reduced or prevented" her injury. Ducat v. Ethicon, Inc., 534 F. Supp. 3d 152, 158 (D. Mass. 2021) (quoting Evans v. Lorillard Tobacco Co., 990 N.E.2d 997, 1014 (Mass. 2013)). Plaintiff's expert James Tertin testifies Catatao's P320 was defective because it was a single-action pistol with no trigger safety, making it dangerously susceptible to accidental discharge. Tertin supports his opinion with results from his experiments comparing the P320 with the Glock 19, which uses a tabbed trigger. Moreover, Tertin opines that a tabbed trigger would have been reasonably cost-effective. He indicates all other striker-fired pistols use an external safety. See Dkt. 67-13 at 15-16.

Catatao also has raised a genuine issue of fact regarding causation. A plaintiff pursuing a design-defect claim need only

6

prove "that his or her injury was, more probably than not, caused by a defect in the product." Kearney, 916 F. Supp. at 64 (emphasis added) (citing Walsh v. Atamian Motors, Inc., 406 N.E.2d 733, 734 (Mass. App. Ct. 1980)). Tertin testifies a tabbed trigger would have made a key actuating Catatao's P320 in its holster "highly improbable," and "would certainly have helped prevent" her injuries. See Dkt. 80-19 at 39:9-20, 82:11-83:7. Similarly, Plaintiff's second expert, William Vigilante, concludes that if a key caused Catatao's P320's trigger to depress, "it is more likely than not that a tabbed trigger safety would have prevented" Catatao's injuries. Dkt. 67-12 at 38. Both Tertin and Vigilante conducted experiments to support their opinions. A reasonable jury could decide based on this evidence that it is "more probabl[e] than not" Catatao's P320's lack of a tabbed trigger caused her injuries. Kearney, 916 F. Supp. at 64. Thus, Sig Sauer's motion for summary judgment misses the mark.[2]

---

[2] In its prior orders, the Court discussed in detail the substance and admissibility of Tertin's and Vigilante's expert opinions. The Court concluded Tertin could testify as to both design defect and causation, and Vigilante could testify as to causation. See Dkts. 94 & 95.

**ORDER**

For the reasons stated above, Sig Sauer's motion for summary judgment (Dkt. 67) is **DENIED**.

SO ORDERED.

/s/   PATTI B. SARIS
Patti B. Saris
United States District Judge